RITE-WAY PLUMBING & HEATING, INC., Plaintiff, *v.* WIL-FREDS, INC., Defendant and Third-Party Plaintiff-Appellant.—(PULLMAN BANK & TRUST CO., Trustee, *et al.*, Third-Party Defendants-Appellees.)

Second District   No. 77-73

Opinion filed August 29, 1978.

James E. O'Halloran, Jr., and Thomas C. Walker, both of Bell, Boyd, Lloyd, Haddad & Burns, of Chicago, for appellant.

Howard C. Emmerman, of Rudnick & Wolfe, of Chicago, for appellees.

Mr. JUSTICE GUILD delivered the opinion of the court:

This suit involves the interpretation of two contracts for the construction of the Maple Lakes Apartments project in Woodridge, Illinois. It was originally brought by subcontractors of the general contractor, Wil-Freds, Inc. Wil-Freds, in turn, filed a third-party complaint against the titleholder of record, Pullman Bank & Trust Co., as trustee, and W. G. Barr & Associates, William G. Barr and D. F. Antonelli, Jr., the beneficiaries of the land trust in the Pullman Bank. The original suit was settled and the case proceeded on the third-party complaint of Wil-Freds against the Bank and the other parties (hereinafter sometimes called the owners). The trial court entered judgment on the third-party complaint in favor of the contractor in the sum of $78,216.17, which the owners admitted was due and owing. A counterclaim having been filed by the owners alleging damages in the sum of $119,650, the trial court entered judgment on this claim in favor of the owners in the sum of $2500. The contractor, Wil-Freds, Inc., appeals.

A contract was entered into on September 15, 1970, between Wil-Freds,

the contractor, and the defendant, Pullman Bank & Trust Co., entitled "Construction Contract—Cost Plus" (FHA contract). This contract provides that the contractor shall receive only the cost of construction as defined in article 10 of that contract. A second contract was entered into on September 18, 1970, between Wil-Freds, the contractor, and the defendants William G. Barr and D. F. Antonelli, Jr., hereinafter referred to as the supplemental agreement. This agreement provides that Wil-Freds, the contractor, is to receive as a fee for its performance of the FHA contract "a sum equal to 10.24% of the actual cost of construction as defined in Article 10 of the aforesaid 'Construction Contract—Cost Plus' [FHA contract] exclusive of any overhead expenses therein contained."

In the course of construction of this project, Wil-Freds subcontracted a part of the work to two subsidiary corporations, Hirsekorn Construction Co., Inc., for the masonry work and Concrete by Noffsinger for the concrete work. At least a controlling interest in both of these subcontractors was owned by the general contractor, Wil-Freds. The fact that the contractor intended to utilize his subsidiaries and to seek overhead and profit for them was made known to the defendants before either contract was entered into and no objection was raised. Examination of the record discloses that the attorneys for the owners advised them

"* * * that Wil-freds, Inc. has a substantial interest in a concrete subcontractor, Concrete by Noffsinger and a masonry sub-contractor, Hirsekorn Construction Company, Inc., with both of which firms it intends to contract on a General Contractor-Subcontractor basis for material and services in connection with the referenced project. There can be little question but that an identity of interest between Wil-freds and the named Sub-contractors exists. You are advised that identity of interest subcontracts may be approved for inclusion of profit and overhead upon cost certification only in the event that (a) the subcontractor had demonstrated experience and capability in the specific field covered; and (b) the subcontracts are no higher than the best prices which could be obtained from outside sources where outside sources are available * * *."

There has been no question properly raised in this proceeding as to the subcontractors not being experienced and capable or that the prices of the subcontracts were higher than the best price available. This relationship of Wil-Freds to its subsidiary subcontractors was disclosed to the FHA by the owners.

At the outset this rather complicated situation may best be shown by the figures contended for by the owners and accepted by the trial court in awarding a balance due under the supplemental agreement in the sum of $78,216.17.

| | | |
|---|---|---|
| Amended Cost Certification | | $4,373,506.11 |
| LESS: | | |
| Wil-Fred's overhead | $65,100.00 | |
| Tap On Fees | 95,250.00 | |
| Wil-Fred's profit | 10,029.74 | |
| Concrete by Noffsinger | | |
| Profit and Overhead | 34,492.00 | |
| Hirsekorn Construction Co. | | |
| Profit and Overhead | 32,143.96 | 237,015.70 |
| | | |
| CORRECT COST BASE | | $4,136,490.41 |
| 10.24%—Agreed percentage of cost base | | $423,576.62 |
| | | |
| LESS: | | |
| Wil-Fred's profit | $10,029.74 | |
| Wil-Fred's Overhead | 65,100.00 | |
| Concrete by Noffsinger | | |
| Profit and Overhead | 34,492.00 | |
| Hirsekorn Construction Co. | | |
| Profit and Overhead | 32,143.96 | |
| Funds paid on Account | 203,594.75 | 345,360.45 |
| | | |
| REMAINDER DUE | | $78,216.17 |

It is to be noted that in the above statement by the owners all items are agreed upon except the three, Wil-Freds' profit in the sum of $10,029.74 and the items of profit and overhead of the sub-contractors, Concrete by Noffsinger in the sum of $34,492 and Hirsekorn Construction Co. in the sum of $32,143.96. These last three items are the subject of this lawsuit and an analysis of the record shows that the trial court refused to allow what it termed as "profit on a profit," disallowing the three items in question.

■■ An examination of the record discloses no provision that we can find in the supplemental agreement by the contractor with the owners providing for inclusion of a profit on "Wil-Fred's own work forces" in calculating the actual cost of construction. This profit is necessarily found in the 10.24% profit provision of the supplemental agreement and there is no reason why a profit in addition to that should be allowed if the same is not provided for in the supplemental agreement. The mere fact that the

FHA approved the cost certification including the $10,029.74 profit to Wil-Fred's own work force does not mean it was properly included in or contemplated by either contract.

■■ The other two items, dealing with the subcontractors, raise a different proposition. In this court's opinion the defendants were adequately advised that there were to be two subcontractors as listed, and the owners' attorney, as set forth above, so advised them. No objection was raised to this at any time. We, therefore, see no reason why the subcontractor profit should not be allowed as it would be to an outside subcontractor where the builder, or owner, is advised that the subcontractors, owned in substantial part by the general contractor, "may be approved for inclusion in profit and overhead upon cost certification." We therefore reverse that part of the trial court's finding that these items should not be allowed. Where the defendants agree and raise no objection to this situation they may not now object to the same on the theory that the subcontractor made a profit as well as the contractor on the same items.

The issues presented herein have not been stated prior to this time so that the same may be more fully understood. Wil-Freds contended that they were entitled to $162,732.44 as the balance due them on the supplemental agreement. As indicated above, the owners admitted owing Wil-Freds $78,216.17. This left a balance of $84,516.27 in dispute. The second issue presented is whether the contractor, Wil-Freds, is entitled to prejudgment interest on either the $78,216.17 acknowledged to be due and owing by the owners or the entire amount properly found due them. The third issue is whether the circuit court was guilty of reversible error in granting the defendants the sum of $2500 in damages under their counterclaim.

Turning once again to the contention of the contractor that the supplemental agreement is clear and unambiguous, we have indicated that that is not the fact. There is no provision in the supplemental agreement specifically allowing profit and overhead to the two subcontractors owned by the contractor. We have held above that the supplemental agreement contemplated inclusion of those items because of the prior disclosure to the owners through their attorneys that profit and overhead was going to be allowed to the subcontractors in question. This, of course, is contrary to the finding of the trial court. Additionally, as we have indicated above, the profit allowed on the "actual cost of construction" on work of Wil-Freds' own employees was not contemplated by the supplemental agreement or any other agreement. We are not impressed by the fact that the FHA approved the actual cost of construction as $4,373,506.11, including the sum of $10,029.74, which represents the additional profit for use of Wil-Freds' own employees.

Referring to the owner's statement, the following chart states the proper computation of the amount due Wil-Freds.

| | | |
|---|---|---|
| Amended Cost Certification | | $4,373,506.11 |
| LESS: | | |
| Wil-Freds Overhead | $65,100.00 | |
| Wil-Freds Profit | 10,029.74 | |
| Tap on Fees | 95,250.00 | 170,379.74 |
| CORRECT COST BASE | | $4,203,126.37 |
| 10.24%—Agreed percentage of cost base | | $430,400.14 |
| LESS: | | |
| Wil-Freds profit | 10,029.74 | |
| Wil-Freds overhead | 65,100.00 | 75,129.74 |
| TOTAL GROSS AMOUNT DUE UNDER CONTRACT | | $355,270.40 |
| LESS: | | |
| Monies paid on account | | 203,594.75 |
| REMAINDER DUE | | $151,675.65 |

We therefore remand to the trial court with instructions to that court to vacate its prior judgment and to enter judgment for the appellant herein in the sum of $151,675.65 on his complaint.

We turn then to the question of the allowance of $2500 to the defendants under their counterclaim herein. It is to be noted that the defendants in their counterclaim alleged defective work in the sum of $119,650 with the testimony adduced by John L. Antonelli for the defendants who indicated that the actual cost of repairing the blacktopping damage for defective condition was between $2500 and $3000. The trial court allowed the sum of $2500 and we do not find this to be against the manifest weight of the evidence and the same is hereby approved.

■■ We turn next to the difficult question of the allowance of prejudgment interest. The contractor herein contends that the following provisions of section 2 of the Interest Act (Ill. Rev. Stat. 1975, ch. 74, par. 2) are applicable.

"Creditors shall be allowed to receive at the rate of five (5) per centum per annum for all moneys after they become due on any

bond, bill, promissory note or other instrument of writing * * * and on money withheld by an unreasonable and vexatious delay of payment * * *."

Under this statute the contractor contends that he is entitled to the sum of 5% on the entire amount due and owing him, which we have indicated above would be the sum of $151,675.65. In the answer of the owners filed August 17, 1973, the owners admitted that they owed $77,829.55 later amended to the amount of $78,216.17. While we find that the contractor is entitled to prejudgment interest on this agreed sum, it is difficult to determine from the record before us when the interest should start.

In the complaint the contractor claims that they are entitled to prejudgment interest from February 1, 1972. In this court they contend that they are entitled to prejudgment interest from January 20, 1972. The memorandum of the trial court filed October 15, 1976, does not disclose any direct ruling by the court on the subject of this interest, nor does the order of the court entered November 10, 1976, awarding judgment in the sum of $78,216.17 to the contractor. The supplemental agreement provides that the final payment to the contractor "shall be payable upon the expiration of 30 days after the mortgage loan for the construction of the housing project has been finally endorsed for mortgage insurance purposes by the Federal Housing Commissioner." The record does not disclose when this endorsement for insurance purposes was made.

We thus have a number of dates from which the prejudgment interest could possibly become applicable. It appears to this court that the solution to this question, and perhaps the most equitable date from which prejudgment interest becomes applicable, is from the date of the acknowledgment by the owners of the amount due, to-wit, August 17, 1973.

■■ As to the question of interest on the additional amount allowed for the two subcontractors herein, a different situation prevails. It is obvious that this amount is not subject to "easy computation" as contended for by the plaintiff. We therefore find that the cases cited for this proposition are not applicable. As indicated, the trial court found that no sums were due to the subcontractors in question while this court, in turn, has found that the same is due. This hardly indicates a subject of easy computation, nor do we find that this money was withheld by an unreasonable and vexatious delay of payment as provided for in the statute in question. (Ill. Rev. Stat. 1975, ch. 74, par. 2.) In view of the complexity of the question herein, the divergence of opinion between the trial court and this court, we do not believe that interest should be allowed on this disputed question. We therefore disallow interest except as to the agreed amount of $78,216.17.

For the reasons stated above, the portion of the judgment granting defendants $2500 on the counterclaim is affirmed. The $78,216.17

judgment for plaintiff on the complaint is reversed and the trial court is directed to enter judgment in favor of plaintiff for $151,675.65, with the appropriate prejudgment interest, as above indicated.

*Affirmed in part, reversed in part and remanded with instructions.*

BOYLE and WOODWARD, JJ., concur.